# IN THE UNITED STATES DISTR ICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORGE L. CONCEPCION,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVL ACTION NO. 21-CV-1060** |
| | : | |
| **KYLE A. RUSSELL,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**BAYLSON, J.**                                                                                    **JUNE 21, 2021**

Currently before the Court is an Amended Complaint filed by Plaintiff Jorge L. Concepcion, pursuant to 42 U.S.C. § 1983, challenging the constitutionality of the conditions in which he was confined at the Lehigh County Jail ("LCJ"). For the following reasons, the Court will dismiss the Amended Complaint in its entirety for failure to state a claim, pursuant to 28 U.S.C § 1915(e)(2)(B)(ii).

## I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Concepcion filed his initial Complaint in this matter while he was a pretrial detainee incarcerated at LCJ. He generally alleged that the Defendants — seven prison officials or employees of LCJ — were improperly denying his grievances, denying him access to the courts, retaliating against him, and subjecting him to unconstitutional conditions of confinement. In a March 18, 2021 Memorandum and Order, the Court granted Concepcion leave to proceed *in forma pauperis* and dismissed his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Concepcion v. Russell*, Civ. A. No. 21-1060, 2021 WL 1061154, at *1 (E.D. Pa. Mar. 18, 2021).

The Court found Concepcion's initial Complaint deficient for several reasons. First, his claims based on alleged mishandling of grievances or improper responses to grievances were

dismissed with prejudice because inmates lack a constitutional right to a grievance process.  *Id.*
at *3.  Second, Concepcion failed to state a retaliation claim because he did not "allege with any
specificity how any Defendant's given action is plausibly linked to that Defendant's intention to
retaliate based on a particular grievance, grievances, or lawsuit Concepcion filed."  *Id.*  Third,
Concepcion failed to state a claim for denial of access to the courts because he failed to allege
actual injury in the form of a nonfrivolous claim that was lost.  *Id.* at *4.  Fourth, Concepcion's
due process claim based on the loss of his sneakers was dismissed with prejudice.  *Id.*

Fifth, Concepcion failed to state a claim based on allegations he was falsely charged with
a disciplinary infraction because his allegations reflected that he received a hearing on the
charge.  *Id.* at *5.  Sixth, the denial of showers for three days was insufficiently serious to
amount to a constitutional violation.  *Id.* at *6.  Seventh, the denial of phone calls for three days
also did not equate to a constitutional claim.  *Id.*  Finally, Concepcion's allegation that he was
"deliberately exposed to COVID-19" was unsupported by any clear factual allegations.  *Id.*

Concepcion was given leave to file an amended complaint as to his claims except for his
claims based on the handling of grievances and loss of his sneakers, which were dismissed with
prejudice.  *Id.*  Concepcion subsequently filed an Amended Complaint (ECF No. 10), a Motion
for Injunction (ECF No. 9), and a Notice (ECF No. 11), which indicated that he had not received
the Court's March 18th Memorandum and Order.  Accordingly, the Court resent the March 18th
Memorandum and Order and Concepcion's Amended Complaint to him, and instructed him to
review those documents and advise the Court whether he preferred to proceed on his Amended
Complaint as filed or submit a second amended complaint.  (ECF No. 12.)  In the meantime,
Concepcion was released from LCJ and provided a new address.  (ECF No. 13.)  Accordingly,
the Court resent the documents to Concepcion; the Court also denied his request for injunctive

release as moot. (ECF No. 14.) Concepcion subsequently informed the Court that he intended to proceed on his Amended Complaint as filed. (ECF No. 15.)

During this time, Concepcion was pursuing a previously-filed lawsuit against some of the same Defendants named in this case. In *Concepcion v. Russell*, Civ. A. No. 21-274 (E.D. Pa.), Concepcion alleged that he was assigned to a top bunk bed lacking a ladder despite suffering from severe arthritis in his knees, and the defendants were aware of his medical needs but removed a chair he required to access his assigned top bunk, causing him to sleep on a bench or the floor for a three week period from his arrival at LCJ on September 17, 2020 through October 8, 2020. In an April 20, 2021 Memorandum and Order issued in that case addressing Concepcion's amended complaint, the Court dismissed Concepcion's official capacity claims, his claims based on the general absence of ladders from the bunk bed, and his claims against Warden Russell, Deputy Warden McFadden, and the Medical Director at LCJ. *Id.* (ECF Nos. 12 & 13). The Court directed service on Defendants Officer Gotling, Officer Reeves, Officer Bowlby, and "John Doe – Midnight CO" so that Concepcion could proceed on his claims that those Defendants were deliberately indifferent to his medical needs during the three-week period Concepcion was assigned to a top bunk bed. *Id.* Those claims are currently pending.

Turning back to the instant civil action, the Amended Complaint names as Defendants the following officials and employees of LCJ: (1) Warden Kyle A. Russell; (2) Sgt. Kowol; (3) Sgt. Gonzalez; (4) Robert Krasley, identified as a "Case Manager"; (5) Michelle Ramos, also identified as a "Case Manager"; (6) Mike Salter, identified as a "Case Manager Supervisor"; (7) Doug Mette, also identified as a "Case Manager Supervisor"; (8) C.O. Kieser; (9) C.O. Cassy

Benner; (10) C.O. Reilly; (11) C.O. Bowlby; and (12) Lt. Ron Kiefer.[1]  The Defendants are sued in their individual and official capacities.

Concepcion alleges that he was retaliated against when prison officials "intentionally filed false disciplinary charges for filing grievances", deprived him of "necessities" and denied him access to the courts.  (ECF No. 10 at 5.)[2]  His claims are articulated in a generalized manner, so it is difficult at times to determine the factual contours of what happened, when it happened, and who was involved in a given set of events.

Concepcion alleges that he filed grievances throughout the duration of his incarceration at LCJ from September 2020 through April 2021, "to stop harassing [him], stop [threatening] him [and] stop the retaliation."  (*Id.* at 4.)  Many of the allegations in the Amended Complaint concern the alleged mishandling of Concepcion's myriad grievances.  (*Id.* at 7-8 (Defendant Russell), 11-12 (Defendants Salter and Mette), 18 (Defendant Kiefer).)  He does not, however, discuss those grievances with any specificity.  At some point, Concepcion was placed on a grievance restriction, although it is unclear when this happened relative to the other events described in his Amended Complaint.  (*Id.* at 8 & 18.)  Concepcion also generally alleges that certain Defendants harassed and/or mocked him and that they generally retaliated against him because he filed grievances and a lawsuit.  (*Id.* at 7-8, 11, 13, 17.)  The references to Concepcion's lawsuit could be understood from context to refer to the complaint he previously filed in this Court, Civil Action Number 21-274, that he signed on November 18, 2020, that the

---

[1] Defendants Russell, Mette, Salter, Kowol and Ramos were named in the initial Complaint, but the remaining Defendants were not.  The initial Complaint also named two Defendants who were not included in the Amended Complaint, namely, Jose Huezo and Bob Doe, although Bob Doe appears to be the same individual as Defendant Robert Krasley.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

Court received on January 8, 2021, and that was not served on any defendants until Concepcion had been released from LCJ. *See Concepcion v. Russell*, Civ. A. No. 21-274 (E.D. Pa.).

Concepcion's Amended Complaint also discusses various conditions and events that occurred during his incarceration. He reiterates the allegations raised in his Civil Action Number 21-274, *i.e.*, that his medical needs were not adequately addressed when he was required to use a chair to access a top bunk bed for a three-week period from September 17, 2020 through October 8, 2020, and made to sleep on a cold bench and the floor. (ECF No. 10 at 7 &17.) He also alleges that he was denied access to the law library, pens, stamps, and other supplies that he apparently sought to use to file a lawsuit. (*Id.* at 7, 11.) Concepcion does not identify any claims or lawsuits he sought to bring, and it is not clear whether he is referring to Civil Action Number 21-274, this lawsuit, or other claims that he did not describe. He also generally alleges that his mail was delayed or returned for no reason in violation of LCJ policy, and that, although he filed Civil Action Number 21-274 on January 8, 2021, he "didn't receive it [presumably some correspondence from the Court] till 2-22-21 and the envelope was clearly tampered with and opened." (*Id.* at 8.)

Although many of Concepcion's allegations are pled in a vague and generalized manner, he also describes some events with more particularity. For instance, Concepcion alleges that during the second week of November 2020, he provided Defendant Krasley with copies of his "legal work," which from context could be understood to relate to Civil Action Number 21-274, and that Krasley refused to make copies to help Concepcion sue the jail. (*Id.* at 10, 17.) Concepcion also claims that Krasley prevented him from filing grievances, threatened him with disciplinary action, and failed to make a proper copy of a motion Concepcion sought to file. (*Id.* at 10.) Concepcion also alleges that Krasley and Defendant Mette delayed notary services when

it took them more than a month, rather than a week as represented, to provide those services for an unspecified purpose. (*Id.* at 10, 12.) Defendants Benner, Gonzalez, and Ramos allegedly failed to ensure that Concepcion was present for a January 22, 2021 teleconference in New York State Bronx Family Court concerning a child support order he claims he has been dealing with since 2013. (*Id.* at 15.) Concepcion alleges that his "petition" was denied because he missed the hearing. (*Id.*)

Concepcion also describes two occasions when he claims he was falsely charged with disciplinary violations. Concepcion alleges that on October 8, 2020, Defendant Kowol instructed Defendant Bowlby to write "a frivolous and spiteful disciplinary report" that caused him to spend "30 days in confinement." (*Id.* at 9.) Concepcion alleges that he was denied a fair hearing on the disciplinary charge because videos were not reviewed and Bowlby indicated Kowol was a witness even though Kowol was not present for the unspecified event. (*Id.* at 17.) He suggests the officer presiding over the hearing "simply took the false report as true." (*Id.* at 9.) Concepcion alleges that Defendant Bowlby filed the disciplinary report to retaliate against him for "filing civil action and grievances" against him. (*Id.* at 17.) He adds that the "chain of events occurred or began after [his] encounters with the case manager [Krasley] that kept [his] civil complaint for copies over the weekend and after clearly reading its contents and not wanting to make copies" even though Concepcion indicated that he provided his legal work to Krasley in November, after Bowlby charged him with the infraction. (*Id.*)

In December 2020, Concepcion was denied exercise, showers, and contact with his family for three days. (*Id.* at 13.) He alleges that he complained about this to Defendant Kieser, who called an "emergency code" that brought Kowol to the unit. (*Id.* at 9 & 13.) Concepcion alleges that Kowol instructed Kieser to falsely charge Concepcion with threatening staff and that,

despite Concepcion's request, cameras were not reviewed in assessing the validity of this disciplinary charge. (*Id.*) He also alleges that this occurred "after [he] filed a civil suit." (*Id.*)

Concepcion also alleges that his clothing, underwear, socks, and t-shirts were confiscated from him on March 2, 2021 and that the next day, he was called by Defendant Reilly who handed him a bag of "filthy, dirty under clothes that stunk so bad." (*Id.* at 16.) Concepcion saw that other inmates received new, clean clothes, so he asked for an exchange and to be treated "fairly." (*Id.*) Defendant Reilly denied this request. (*Id.*) When Defendant Gonzalez arrived at the unit, Concepcion explained what happened and alleges that Reilly "admitted to the details" and said he wasn't going to give Concepcion underclothes at all. (*Id.*) Gonzalez then distributed the rest of the "new" underclothes to others. (*Id.*)

Concepcion brings assorted constitutional claims based on these allegations. He primarily seeks damages.[3] (*Id.* at 6.)

## II.    STANDARD OF REVIEW

Since Concepcion is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in

---

[3] Concepcion's request for an "injunction to deter and prevent . . . further retaliation" (ECF No. 10 at 6) is moot because he is no longer incarcerated at LCJ.

favor of the plaintiff," but disregard "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" in determining whether a plaintiff has stated a claim. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018) (quotations omitted). In other words, conclusory allegations do not suffice to state a claim. *Iqbal*, 556 U.S. at 678. As Concepcion is proceeding *pro se*, the Court must construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Importantly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Although Concepcion primarily pursues claims for denial of access to the courts, false disciplinary charges, and retaliation, the Court has liberally construed his Amended Complaint to address all possible claims he may be pursuing. Despite that liberal construction, Concepcion has not alleged a plausible basis for a claim against any Defendant. Indeed, his claims suffer from many of the same deficiencies as the claims the Court dismissed upon screening Concepcion's Complaint.

### A. Official Capacity Claims

Concepcion has sued the Defendants in their official capacities as well as their individual capacities. Official capacity claims are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55

(1978)).  Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Accordingly, Concepcion's official capacity claims against employees and officials of LCJ are essentially claims against the employing municipality, Lehigh County.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of a plaintiff's injury, the defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury."  *Id.* (internal quotations and alterations omitted).  A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Nothing in the Amended Complaint plausibly alleges that the conditions or conduct of which Concepcion complains was the result of a municipal policy or custom.  Accordingly, Concepcion has failed to state plausible official capacity claims against the Defendants.  The

Court will address Concepcion's claims against the Defendants in their individual capacities below.

**B.      Claims Based on Grievances**

Many of Concepcion's allegations again appear to assert claims based on certain Defendants' alleged mishandling his grievances, their allegedly false or improper responses to his grievances, and their placing him on a grievance restriction.  To the extent Concepcion intended to pursue any constitutional claims based solely on the grievance process, these claims fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam); *Rosado v. Virgil*, Civ. A. No. 09-156, 2011 WL 4527067, at *9 (W.D. Pa. Sept. 28, 2011) (since prisoners have no constitutional right to a grievance process, it follows that placing a prisoner on grievance restriction does not independently violate the constitution).  In other words, the alleged improper denial of grievances or placement of an inmate on grievance restriction does not violate the Constitution.  Accordingly, the facts alleged by Concepcion about grievances do not give rise to a plausible basis for any independent constitutional claims.[4]

**C.      Harassment and Mocking**

Throughout the Amended Complaint, Conception alleges that various Defendants "harassed" or "mocked" him.  He often does not provide additional information about the nature

---

[4] Additionally, it appears that Concepcion is seeking to hold many of the Defendants liable for the actions of others based solely on their responses to grievances.  In general, the failure to adequately respond to a grievance is an insufficient basis for establishing a Defendant's personal involvement in the claimed constitutional violation.  *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (claims based on "review and denial of [plaintiff's] grievance" were appropriately dismissed for failure to state a claim).

of the harassing or mocking behavior directed at him, the context in which these incidents took place, or the timing of when these events occurred. Even leaving aside the vague nature of these allegations, mocking and verbal harassment of a prisoner simply do not give rise to an independent constitutional violation. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that threats that inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim); *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (holding that threat to spray inmate with mace did not violate Eighth Amendment); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). Accordingly, the Court will dismiss these claims.

**D.    Deliberate Indifference to Medical Needs**

At times, Concepcion vaguely alleges the he is not receiving treatment for his medical needs. Although deliberate indifference to serious medical needs violates the constitution, Concepcion does not specifically identify any serious medical need in his Amended Complaint. Furthermore, the allegations touching on this subject appear to duplicate the allegations raised in Concepcion's prior, pending lawsuit regarding the three-week period when he was assigned to a top bunk bed. *Compare Concepcion v. Russell*, Civ. A. No. 21-274 (E.D. Pa.) *with* (ECF No. 7 (alleging Concepcion was "subjected to sleeping on a cold bench and floor from 9-17-20 till 10-8-20"). For these reasons, Concepcion's claims regarding deliberate indifference to his medical needs will be dismissed without prejudice to him proceeding on his claims in Civil Action Number 21-274. *See Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (*en banc*) (explaining that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant"). To the

extent Concepcion intended to raise any other claims based on deliberate indifference to his serious medical needs, those claims are not plausibly pled and will be dismissed.

### E. Denial of Access to the Courts

Many of Concepcion's allegations could be understood to relate to claims that he was denied access to the court. He alleges that he was denied access to the law library, denied pens, copies, stamps, and other supplies he sought to pursue lawsuits, that notary services he sought were delayed, and that a lien was placed on his institutional account that prevented him from paying for supplies. Concepcion also alleges that Defendant Ramos caused him to miss a videoconference in a case in New York that led to his petition being denied.

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' — that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415.

Although many of Concepcion's allegations focus on legal claims he apparently sought to pursue, his Amended Complaint fails to provide any explanation of those claims. Furthermore, the Amended Complaint alludes to Concepcion's previously filed civil action in this Court, *Concepcion v. Russell*, Civ. A. No. 21-274 (E.D. Pa.), which was, in fact, received by the Court. Concepcion is proceeding in that lawsuit and there is no indication that anything the Defendants did or did not do prejudiced his ability to proceed in that lawsuit. Nor is there any indication that

Concepcion was prevented from pursuing claims in this lawsuit or any other lawsuit. Although he alleges that a petition he filed in the New York courts was denied because certain Defendants caused him to miss a hearing, Concepcion failed to describe what that petition was and the relief it sought, and does not indicate why a denial of access claim is his only remedy. In sum, Concepcion has failed to plausibly allege any actual injury as a result of the Defendants' conduct that could equate to a denial of access to the courts, so the Court will dismiss these claims. *See, e.g.*, *Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim); *see also Talley v. Varner*, 786 F. App'x 326, 328 (3d Cir. 2019) (*per curiam*) (no denial of access to the courts where inmate "failed to allege what underlying nonfrivolous claims he was unable to pursue due to [a] two-week delay" caused by the defendants); *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 566 F. App'x 113, 116 (3d Cir. 2014) (*per curiam*) ("Here, Williams alleged only that he was told he could not send mail without having sufficient funds. He has not alleged that he lost a claim because of the supposed denial, and therefore he has not made out an access-to-the-courts claim.").

## F. Denial of Showers and Exercise

Concepcion appears to be raising claims based on his allegation that he was denied showers and exercise for three days. As Concepcion was a pretrial detainee at the time of relevant events, the Fourteenth Amendment applies to his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). "Unconstitutional punishment [under the Fourteenth Amendment] typically includes both objective and subjective components." *Stevenson*, 495 F.3d at 68. "[T]he objective component requires an inquiry into whether 'the deprivation [was] sufficiently serious" and the subjective component asks whether 'the officials act[ed] with a sufficiently culpable state

of mind[.]'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To satisfy the subjective component, a detainee generally must allege that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

The denial of showers and exercise for three days does not constitute the type of serious deprivation that amounts to a constitutional violation. *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days. Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise."); *Coleman v. Hodges*, Civ. A. No. 18-1152, 2018 WL 6618459, at *8 (W.D. Pa. Nov. 30, 2018), *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) ("[B]eing denied a shower for four days does not constitute a serious enough deprivation of sufficient duration to establish a constitutional violation") (citing cases); *Barndt v. Wenerowicz*, Civ. A. No. 15-2729, 2016 WL 6612441, at *4 (E.D. Pa. Nov. 8, 2016), *aff'd,* 698 F. App'x 673 (3d Cir. 2017) (denial of showers and out of cell exercise for twenty-eight days did not violate Eighth Amendment when plaintiff did not suffer ill effects and

had access to running water in his cell); *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 738 (W.D.N.Y. 2015) ("To the extent Plaintiff alleges that his inability to shower over the course of four days constitutes a constitutional deprivation, his claim must fail.  Even a two-week suspension of shower privileges does not constitute a denial of 'basic hygienic needs.'" (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003)).  Furthermore, Concepcion does not allege how any of the named Defendants were directly responsible for placing him in these conditions.  Accordingly, Concepcion has not stated a constitutional claim based on the denial of showers or exercise for three days.

### G. Phone Calls

Concepcion again appears to allege that the denial of phone calls for three days violated his rights, apparently because he could not contact his children for three days.  Although prisoners may have a limited First Amendment right to communicate with family and friends, *see Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003), "prisoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their First Amendment rights." *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (*per curiam*) (quoting *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994)).  Given the brief time period that Concepcion was denied phone calls and the absence of any additional allegations about how that denial interfered with his ability to communicate, Concepcion has again failed to state a plausible claim.  *See Aruanno v. Johnson*, 568 F. App'x 194, 195 (3d Cir. 2014) (*per curiam*) (conclusory allegations "concerning [prisoner's] lack of phone access to friends and family" failed to state a claim); *Almahdi*, 310 F. App'x at 522 (rejecting First Amendment claim based on telephone restrictions where "Almahdi makes no assertion—and there is no evidence — that he lacked alternative means of communicating with persons outside the prison") (citing *Valdez v.*

*Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002)); *Sonsini v. Lebanon Cty.*, Civ. A. No. 20-00392, 2021 WL 602734, at *20 (M.D. Pa. Feb. 16, 2021) ("Such a one-time denial of a phone call without more does not violate the First Amendment.") (citing cases). Concepcion has also failed to allege with specificity how any of the named Defendants were involved in or responsible for this particular deprivation.

### H.    Clothing

Concepcion alleges that he was "denied warm clothing to exercise outdoors and to change clothing regularly" and suggests he was only given one change of clothes for some period of time. (ECF No. 10 at 7.) Concepcion also alleges that his clothing, underwear, socks, and t-shirts were confiscated from him on March 2, 2021 and that the next day Defendant Reilly replaced those clothes with a bag of "filthy, dirty under clothes that stunk so bad." (*Id* at 16.) Concepcion allegedly saw that other inmates received new, clean clothes, so he asked for an exchange and to be treated "fairly," but Defendant Reilly denied this request. (*Id.*) Defendant Gonzalez arrived on the unit and then distributed the rest of the "new" underclothes to others despite having been informed of Reilly's conduct. (*Id.*) Concepcion alleges that he did not receive "the clothing needed because of his medical conditions" that he "can't provide for himself." (*Id.*)

Concepcion's allegations about the amount or quality of clothing do not rise to the level of an objectively serious deprivation so as to constitute a due process violation. As with Concepcion's other claims, it is difficult to determine from the totality of his allegations what clothing he was provided and how long any deprivation lasted. While the clothing he received may not have been of the quality or quantity he preferred, he has not alleged that he was entirely without clothing or that he was deprived of a basic need concerning his health or safety. *See*

*Norman Briggs v. Sgt. Heidlebaugh, Deputy Shannon*, Civ. A. No. 96-3884, 1997 WL 318081, at

*3 (E.D. Pa. May 22, 1997) ("A denial of clean clothes and towels also does not violate the

Constitution if the deprivation was for a brief period of time."); *Veteto v. Miller*, 829 F. Supp.

1486, 1496 (M.D. Pa. 1992) (finding no constitutional claim when inmate "claim[ed] he was

denied meals, clean clothes, showers and recreation periods, but not that he went hungry or lived

in an unsanitary, wholly sedentary environment"). In any event, apart from the incident with

Defendants Reilly and Gonzalez on March 3, 2021, his allegations about clothing are not tied to

any given Defendant.

It is possible that Concepcion intended to bring an equal protection claim against Reilly

and Gonzalez because he appears to be claiming that those Defendants treated him differently by

giving him dirty clothes event though other inmates received clean clothes. "[T]o state a claim

for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally

treated differently from others similarly situated by the defendant and that there was no rational

basis for such treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

"Persons are similarly situated under the Equal Protection Clause when they are alike 'in all

relevant aspects.'" *Startzell v. City of Philadelphia, Pa.*, 533 F.3d 183, 203 (3d Cir. 2008)

(quoting *Norlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Here, Concepcion's Amended Complaint

fails to allege facts establishing that he was similarly situated to the other inmates whom he

claims received preferential treatment, or that he was intentionally treated so irrationally when

the Defendants failed to exchange his clothes that the constitution was violated. Accordingly,

this claim fails as pled. *See Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (rejecting

equal protection claim when inmate did "not allege facts showing that he was similarly situated

to the inmates who received wheelchair footrests, crutches and canes, or that there was no

rational basis for his different treatment"); *see also Aulisio v. Chiampi*, 765 F. App'x 760, 765 (3d Cir. 2019) ("Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim.").

## I. Mail

Concepcion generally alleges that his mail was delayed or returned for no reason in violation of LCJ policy. (ECF No. 10 at 8, 10.) He also suggests that a piece of mail from the Court was tampered with, although this allegation is not clear. (*Id.*) Although isolated instances of interference with a prisoner's mail are insufficient to support a constitutional violation, a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996); *see also Taylor v. Oney*, 196 F. App'x. 126, 128 (3d Cir. 2006) (reaffirming holding in *Bieregu* that "prison officials impinge upon the First Amendment rights of prisoners when they open prisoners' legal mail outside the presence of the addressee prisoner"). To state a First Amendment claim for interference with a prisoner's legal mail, a plaintiff must allege that the interference was done according to a "pattern and practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech.").

Here, Concepcion's allegations about interference with his mail are generalized and do not adequately allege a pattern and practice that raises a constitutional question. Moreover, Concepcion has failed to allege how any Defendant was personally involved in a sufficiently specific manner such that any of the named Defendants could be held responsible for the claimed deficiencies in his mail delivery and/or receipt. *See Taylor v. Oney*, 196 F. App'x 126, 128 (3d

Cir. 2006) (stating that the inmate must allege the "personal involvement on the part of the Defendants in the alleged pattern and practice of opening his mail"). Accordingly, any claims based on Concepcion's mail will be dismissed as implausible.

**J.     Disciplinary Charges**

Concepcion alleges that his rights were violated when he was falsely charged with disciplinary infractions on October 8, 2020 and December 15, 2020. These are best construed as due process claims. The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Id.*; *see also Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007). Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Kanu*, 739 F. App'x at 116. However, "a detainee's right to call witnesses and present documentary evidence is cabined by the prison's discretion to 'keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority,' as well as to refuse to allow specific documentary evidence." *Kanu*, 739 F. App'x at 116 (quoting *Wolff*, 418 U.S. at 565-66). Additionally, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005)

(per curiam), as "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

Here, Concepcion alleges that Defendants Kowol and Bowlby falsely charged him with a disciplinary infraction on October 8, 2020 and that Defendants Kowol and Kieser falsely charged him with a disciplinary infraction on December 15, 2020. Regarding the October 8 incident, he claims that Bowlby, at Kowol's direction, filed a "frivolous and spiteful disciplinary report" although he does not state what the disciplinary infraction was. (ECF No. 10 at 9 & 17.) Concepcion also claims that he was "denied a fair hearing because there was no review of the cameras and C.O. Bowlby wrote down that Sgt Kowol was a witness" even though Kowol was "not present to witness an event that never took place or that implicated [Concepcion]." (*Id.* at 17.) Regarding the December 15, 2020 infraction, Concepcion alleges that Kowol told Kieser to write up Concepcion for threatening staff, even though he did not do so. (*Id.* at 9 & 13.) Kowol was again listed as a witness. (*Id.*) Concepcion also alleges that he again "ended up in confinement and cameras were never reviewed." (*Id*. at 13.)

Concepcion's allegations are insufficient to state a plausible due process claim. He alleges that he was falsely charged with two misconducts, but a false misconduct is not alone a basis for a due process claim and, regarding the October 8th incident, he does not even state the infraction with which he was charged. Concepcion suggests that he was denied a fair hearing because cameras were not reviewed, but given the absence of factual allegations describing what

he was charged with and how the disciplinary proceedings progressed, it is difficult to understand how a review of cameras would have been constitutionally required under the circumstances. Having repeatedly reviewed Concepcion's allegations, the Court lacks any concrete understanding of what exactly transpired regarding these two disciplinary incidents. Given the absence of any meaningful description of the events that gave rise to the misconduct or more specific information about the charges, Concepcion's general allegation that cameras were not reviewed in the course of the disciplinary proceedings on the false charges does not support a plausible inference that he did not receive the process he was due. *See Jackson v. Holland*, Civ. A. No. 20-5207, 2021 WL 1696280, at *4 (E.D. Pa. Apr. 28, 2021) (dismissing claim based on misconduct because prisoner's "conclusory assertion that he was denied the opportunity to call witnesses [was] unsupported by any factual allegations such as which, if any, of the named Defendants acted to violate his rights, who he sought to call as a witness and what that witness might have offered in his defense to the misconduct charge"); *Friend v. Shoemaker*, Civ. A. No. 18-1715, 2020 WL 5910109, at *5 (M.D. Pa. Oct. 6, 2020) ("As to the denial of witnesses, Friend has not clearly identified the witnesses who would have testified or alleged that the testimony was denied in contravention of the prison officials' discretion or violated the institution's policy regarding the presentation of witnesses"); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" (internal quotations omitted)).

## K.     Retaliation

Concepcion alleges that all the Defendants retaliated against him in various respects. To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged

in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). A prisoner's filing of a lawsuit or grievance constitutes constitutionally protected conduct, *see Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000), and being charged with a misconduct is a sufficient adverse action to support a retaliation claim. *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) ("[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006))). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422.

As with the initial Complaint, Concepcion's Amended Complaint appears to be alleging that most of the Defendants generally retaliated against him in some respect because he filed grievances and complaints. Beyond using the word "retaliation," which is a legal conclusion, Concepcion provides no facts linking the complained of behavior to a retaliatory motive. Rather, he predominately appears to be alleging that all of the underlying matters of which he complains — all of which involved different Defendants at different times — stemmed from a generalized desire to retaliate against him for having regularly complained about various matters over the seven-month duration of his detention. Most of Concepcion's allegations of retaliation fail to describe with any specificity how any Defendant's given action is plausibly linked to that Defendant's intention to retaliate based on awareness of a particular grievance, grievances, or

lawsuit Concepcion filed. Rather, he describes what a given Defendant did and then generally surmises that the action was motivated by retaliation because it occurred after he filed grievances and/or complaints. But given the number of grievances and complaints Concepcion appears to have filed, and given the absence of specific facts linking a given behavior with a Defendant's knowledge of a particular grievance or complaint that could plausibly motivate the retaliation, Concepcion's claims fall far short of plausible and must be dismissed. *See, e.g.*, *Hammonds v. Headman*, 645 F. App'x 149, 152 (3d Cir. 2016) (per curiam) ("[B]ecause Hammonds' conclusory allegations fail to raise the required inference of a causal link between his grievance and the filing of misconduct reports, he failed to state a retaliation claim."); *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014) (per curiam) ("Thomas' claims against Dr. Ahner consist of conclusory and somewhat cryptic allegations that Dr. Ahner took Thomas off medication, directed others to do the same, and ordered others to create an extreme and stressful prison environment in retaliation for his 2001 lawsuit. The complaint lacks all detail as to the time, place, or manner surrounding the alleged deprivation and it is entirely unclear from the allegations what level of involvement, if any, Dr. Ahner had in Thomas' care").

This dismissal includes Concepcion's allegations that certain Defendants filed false disciplinary charges against him with a retaliatory motive. He alludes to grievances and a lawsuit that he generally claims motivated the filing of false disciplinary charges against him, but none of his allegations plausibly suggest that the Defendants accused of charging him with false disciplinary infractions knew of a particular grievance or lawsuit and were motivated by retaliation as a result. Indeed, the lawsuit that Concepcion filed in this Court was not received until January of 2021, was not served on any Defendants until May of 2021, and none of the facts alleged in the Amended Complaint suggest that any of the Defendants, except for Krasley,

were even aware of the complaint.  In sum, Concepcion's conclusory allegations of retaliation are undeveloped and do not support a plausible claim.  *See Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation.").

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Concepcion leave to proceed *in forma pauperis* and dismiss his Amended Complaint in its entirety for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Although Concepcion was previously given leave to amend so that he could provide further factual detail about the circumstances underlying his claims, he returned with a pleading suffering from many of the same deficiencies as his initial pleading.  Accordingly, the Court concludes that further attempts at amended would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* prisoner would be futile when prisoner "already had two chances to tell his story").  The Court will therefore dismiss this case with prejudice, except for Concepcion's claims for deliberate indifference to his medical needs, which are dismissed without prejudice to him proceeding in Civil Action Number 21-274.  An Order follows, dismissing this case.

**BY THE COURT:**

**/s/ MICHAEL M. BAYLSON**

_____

**MICHAEL M. BAYLSON, J.**

O:\CIVIL 21\21-1060 Concepcion v Russell\21cv1060 Memorandum 6.21.docx